UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KAREN POOLEY,

    Plaintiff,

v.                                                            CASE NO. 8:16-cv-399-T-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for Supplemental Security Income ("SSI"). Plaintiff claims that she became disabled on July 30, 2008. (Tr. 122.) The administrative law judge held a hearing on April 2, 2012 (Tr. 26-43), and subsequently issued a decision on June 25, 2012, finding Plaintiff not disabled. (Tr. 10-26.)

Plaintiff then filed a civil action in the United States District Court for the Middle District of Florida. Upon Plaintiff's filing of an unopposed motion to remand, the Court remanded Plaintiff's case to the agency for consideration of additional issues. (Tr. 517-28.) A different administrative law judge ("ALJ") held a second hearing on September 30, 2015 (Tr. 454-88), at which Plaintiff was

---

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 16.)

represented by an attorney. The ALJ issued a final decision on November 27, 2015, finding Plaintiff not disabled. (Tr. 435-47.) The ALJ, in reaching that decision, found that Plaintiff had the following severe impairments: "fibromyalgia, chronic low back strain/sprain, diabetes mellitus, and diabetic retinopathy." (Tr. 440.) The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) with limitations. (Tr. 441-42.)

Plaintiff is appealing the Commissioner's decision that she was not disabled from July 30, 2008, the alleged onset date, through November 27, 2015, the date of the decision. Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. The Court has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the Commissioner's decision is **REVERSED AND REMANDED**.

**I.    Standard**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a

conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.   Discussion

Plaintiff argues three general points on appeal. First, Plaintiff argues that the ALJ improperly rejected the opinions of her treating physicians, Vipul Kabaria, M.D. and Philip Corrao, M.D. Plaintiff contends that the ALJ failed to articulate good cause for discounting their opinions. Further, Plaintiff argues that the ALJ erred by affording great weight to the non-examining physician, Charles Plotz, M.D. Second, Plaintiff contends that the ALJ erred by failing to properly evaluate her credibility and subjective complaints. Third, Plaintiff argues that the ALJ failed to pose a comprehensive hypothetical question to the vocational expert

("VE") which accurately described all of Plaintiff's impairments.

The Commissioner argues that the ALJ's evaluation of the medical opinions of record is clearly articulated and supported by substantial evidence. The Commissioner further contends that the ALJ properly evaluated Plaintiff's subjective complaints and found Plaintiff was not entirely credible. Finally, the Commissioner argues that the hypothetical question posed to the VE was proper.

### A. Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination. See 20 C.F.R. § 416.920(a)(3). With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). However, an ALJ need not "specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the reviewing Court] to conclude that [the ALJ] considered [the Plaintiff's] medical condition as a whole.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)).

Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "'[G]ood cause' exists when the: (1) treating physician's

opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5) specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(2)-(6).

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, see *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam); 20 C.F.R. § 416.927(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, No. 8:06-cv-1863-T-27TGW, 2008 WL 649244, at *3 (M.D. Fla. Mar. 10, 2008). Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, No. 06-15638, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. May 2, 2008) (per curiam); s*ee also* SSR 96-6p (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources). While the ALJ is not bound by the findings of non-examining physicians, the ALJ may not ignore these opinions and must explain the weight given to them in his decision. SSR 96-6p.

### B. The ALJ's Decision

The ALJ found that Plaintiff had severe impairments, including fibromyalgia, chronic low back strain/sprain, diabetes mellitus, and diabetic retinopathy. (Tr. 440.) The ALJ then found that Plaintiff did not have any impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 441.) At step four[2], the ALJ found, in relevant part, that Plaintiff had the RFC to:

    lift and carry 20 pounds occasionally and 10 pounds frequently;

---

[2] A five-step sequential evaluation process has been established by the Social Security Administration in the Social Security Act, which is used to determine whether an individual is disabled or not (20 C.F.R. § 416.920(a)).

>  stand and walk for 6 hours in an 8 hour day up to thirty minutes at a time and sit for a total of 6 hours in an 8 hour day, up to 30 minutes at a time. The claimant can frequently climb ramps and stairs and can never climb ladders, ropes, or scaffolds. The claimant can frequently balance, stoop, kneel, crouch, and crawl. The claimant cannot read fine print. The claimant must avoid concentrated exposure to temperature extremes and hazards such as unprotected heights and dangerous or moving machinery.

(T. 441-42.) In making this finding, the ALJ discussed Plaintiff's treatment notes, medical records, the vocational expert's testimony, medical opinions, and testimony from Plaintiff. (Tr. 440-47.)

### C. Analysis

Plaintiff initially argues that the ALJ erred by improperly discounting the opinions of Dr. Kabaria, Plaintiff's treating physician. Specifically, Plaintiff contends that the ALJ failed to articulate good cause for discounting the treating opinions.

On November 6, 2005, Vipul Kabaria, M.D., began treating Plaintiff. Dr. Kabaria treated Plaintiff for almost ten years, with the last noted treatment occurring on September 28, 2015. (Tr. 413-14.) On November 11, 2011, Dr. Kabaria completed a Physical Residual Functional Capacity Questionnaire (the "First Questionnaire"), diagnosing Plaintiff with fibromyalgia. (Tr. 395-99.) The initial question in the First Questionnaire requested the Plaintiff's "date of onset," to which Dr. Kabaria responded, "May 1999." (Tr. 395.) Further, Dr. Kabaria

opined that Plaintiff can stand/walk for less than two hours in an eight-hour workday (Tr. 397), will need to take unscheduled breaks during an eight-hour workday "[a]s needed per intense pain" (*id.*), is likely to have "good days" and "bad days" (Tr. 399), and is likely to be absent from work "more than four times a month" (*id*).

On September 2, 2015, Dr. Kabaria completed a Fibromyalgia Impairment Questionnaire (the "Second Questionnaire"), diagnosing Plaintiff with, *inter alia*, fibromyalgia.  (Tr. 675.)  Dr. Kabaria's prognosis for Plaintiff was "fair to poor." (*Id.*)  The positive clinical findings which supported his diagnosis were:

> (1) painful activity range of motion at lumbar, cervical and multiple joints; (2) paraspinal spasm and trigger points at multiple sites along lumbar, cervical and thoracic spine; and (3) multiple trigger points with tenderness to palpitation over shoulder, hip, knee, and extremities.

(Tr. 675-76.)  Dr. Kabaria opined that Plaintiff could sit for about 0-1 hour, stand/walk for about 0-1 hour, and would need to get up and move around after sitting 1-2 times per hour.  (Tr. 678.)  Additionally, Dr. Kabaria opined Plaintiff would need 2-3 unscheduled breaks an hour for 10-15 minutes each, and that she would have "good days and bad days," which would make her absent from work more than three times per month.  (Tr. 679.)  Further, he stated she could only lift or carry 0-5 pounds frequently and up to 20 pounds occasionally.  (Tr. 678.)  The final question on the Second Questionnaire inquired, "[i]n your best

8

medical opinion, what is the earliest date that the description of symptoms and limitations in this questionnaire applies," to which Dr. Kabaria responded "since 1999." (Tr. 680.)

Upon consideration, the ALJ afforded "little weight" to the opinions of Dr. Kabaria. (Tr. 444.) The first reason that the ALJ provided in discounting Dr. Kabaria's opinions was that Dr. Kabaria's opinions as a whole were inconsistent with his response to the final question listed in the Second Questionnaire–that 1999 was the earliest date the symptoms and limitations of Plaintiff's fibromyalgia applied, when Plaintiff performed substantial gainful activity ("SGA"). Specifically, the ALJ stated:

> With regard to Dr. Kabaria's opinions, it is noted from the outset that in [Dr. Kabaria's Second Questionnaire] dated September 2, 2015, he suggests that the earliest date that the description of symptoms and limitations in the [Second Questionnaire] applies is 1999, almost a decade before the claimant alleges disability and during a time when claimant was engaging in [SGA]. . . Thus from the outset, this major conflict between Dr. Kabaria's opinion and the undisputed reality, severely weakens Dr. Kabaria's credibility such that the undersigned gives little weight to both of his opinions.

(Tr. 444.)

The Court finds this reason insufficient for rejecting Dr. Kabaria's opinions as a whole. First, without developing or discussing the record further on this

point, the ALJ interpreted Dr. Kabaria's answer to mean that Plaintiff's fibromyalgia, in its most developed and most debilitating form, existed since 1999. However, another reasonable interpretation of Dr. Kabaria's response is that Dr. Kabaria viewed 1999 as the date that any of the fibromyalgia symptoms first appeared. Under this interpretation, Dr. Kabaria's answer would not be inconsistent with his medical opinions, as the ALJ claims.[3] *See, e.g., Nash v. Colvin*, No. 15CV50019, 2016 WL 4798957, at *6 (N.D. Ill. Sep. 14, 2016) ("[T]he Court notes that the ALJ found a contradiction by placing much weight on [the doctor's] answer to one, arguably ambiguous question; namely: 'In your opinion, given the past medical records sent, what is the earliest date that the description of symptoms and limitations in this questionnaire applies?' [The doctor] answered: '1998.' The ALJ interpreted this answer to mean basically that Plaintiff's current condition, in its most advanced and most disabling form, existed since 1998. But another equally reasonable interpretation (in fact, a more reasonable interpretation) is that [the doctor] was merely stating that 1998 was *the first date that any of these symptoms, even in their most nascent form, first*

---

[3] The latter interpretation may be more reasonable in light of the record indicating that Plaintiff was diagnosed with fibromyalgia in 1999. (Tr. 388 (indicating in Dr. Corrao's April 1, 2011 questionnaire that Plaintiff's date of onset was May 1999), Tr. 395 (inquiring in the First Questionnaire presented to Dr. Kabaria as to Plaintiff's "[d]ate of [o]nset," to which Dr. Kabaria responded, "May 1999"), Tr. 409 (discussing Plaintiff's fibromyalgia and stating, "[s]ince her diagnosis in May 1999 she has seen two rheumatologists and five neurologists and a physician in California [for fibromyalgia]"), 413 (indicating in Dr. Kabaria's treating notes that Plaintiff had been suffering from generalized body pain since 1999 and noting that Plaintiff was diagnosed with fibromyalgia in May 1999).)

10

*appeared*. Under this interpretation, there would not be an inconsistency with plaintiff being able to work for a period until the problems progressively worsened.") (emphasis added) (internal citations omitted). The Court finds that Dr. Kabaria's "brief, unexplained answer to a single question on a form is not a legitimate reason to discount [his] medical opinion[s] stemming from a multiple-year treating relationship." *Zinner v. Astrue*, No. CV 10-09112 RZ, 2011 WL 6294337, at *2 (C.D. Cal. Dec. 16, 2011) (holding that the ALJ did not provide specific and legitimate reasons to discredit the treating physician's opinion based on the physician's single response to the same question at issue here).

Moreover, the ALJ criticized Dr. Kabaria's response to the question presented in the Second Questionnaire because Plaintiff was engaged in SGA in 1999. However, the record reflects that Plaintiff's earnings dropped from $34,911.37 in 1999 to $27,467.27 in 2000, then to $875.41 in 2001, and eventually to $0.00 in 2002. (Tr. 638.) Plaintiff testified at the hearing that she experienced a significant drop in pay "because of [] health issues." (Tr. 463.) Her testimony also reflects that she did not attempt to seek employment at anytime after 2000-2001. (Tr. 463-64.) She indicated that it was "the fatigue, the unreliability," and ultimately "the fibromyalgia, the aches and pains every day," that prohibited her from continuing normal work. (*Id.*) When put into proper context, a consecutive decline in earnings each year since 1999 is not inconsistent with Dr. Kabaria's opinion. *See, e.g., Rodriguez v. Colvin*, No. 2:14-

cv-1030-EFB, 2015 WL 5814005, at *6 (E.D. Cal. Sep. 30, 2015) (rejecting ALJ's decision to discredit treating physician's opinions based on the inconsistency between the treating physician's opinion that the plaintiff's symptoms and limitations applied "since 2007" and the plaintiff performing SGA in 2007, where record revealed a "significant drop in pay beginning in 2007," and where the plaintiff testified that she attempted to perform work after 2007, but her impairments prevented her from doing so).

The ALJ also provided the following reason for discounting Dr. Kabaria's opinions:

> [M]ost if not all of the treatment records note minimal improvement overall, yet the same medications were routinely continued. The undersigned notes that in December 2009, the claimant was prescribed MSIR 15 mg #120 [morphine], and the most recent record indicates that the claimant was still prescribed MSIR 15 mg #120 with minimal improvement. The undersigned does note a few alterations to the claimant's medications in the interim. However, if an individual is as limited as the claimant alleges, the undersigned finds it questionable that an individual would continue with the same treatment regimen for as long as the claimant if improvement were in deed [sic] minimal as reported by the records. Furthermore, the undersigned notes a very long history of treatment with Dr. Kabaria despite the allegedly minimal improvement, and the undersigned also finds this questionable.

(Tr. 442-43.) The ALJ's explanation is insufficient in this regard. As Plaintiff notes, the ALJ impermissibly substituted his own lay medical opinions for those of the doctors by rejecting the treatment regimen prescribed by Plaintiff's doctors. *See Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982) (holding that an

ALJ may not substitute his opinion for that of a doctor). The ALJ is not a medical doctor and failed to reference any valid basis for finding that Plaintiff's treatment regimen was "questionable." As the ALJ here "substituted h[er] own hunch or intuition for the diagnosis of a medical professional," the ALJ erred in analyzing Dr. Kabaria's opinions. *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992).

Finally, the ALJ discounted Dr. Kabaria's opinions because "the records from Dr. Kabaria solely consist mostly of [Plaintiff's] subjective reports," which "severely weakens Dr. Kabaria's credibility." (Tr. 444.) However, the Eleventh Circuit recognizes that fibromyalgia "often lacks medical or laboratory signs, and is generally diagnosed mostly on an individual's described symptoms," and that the "hallmark" of fibromyalgia is therefore "a lack of objective evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam). Because of this, the Eleventh Circuit has held that a claimant's subjective complaints "are often the only means of determining the severity of a patient's condition and the functional limitations caused thereby." *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x. 56, 63-64 (11th Cir. 2010) (per curiam). With respect to fibromyalgia, a claimant's subjective complaints are therefore insufficient alone to support an ALJ's rejection of a treating physician's opinion as to the claimant's functional limitations. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-08 (2d Cir. 2003) (holding that because fibromyalgia is "a disease that eludes [objective]

measurement," an ALJ errs when that ALJ discredits a treating physician's opinion based upon lack of objective evidence). Because the ALJ failed to articulate other valid reasons for discounting Dr. Kabaria's opinions, the ALJ cannot rely on Dr. Kabaria's reference to Plaintiff's subjective complaints to discount his opinions. The ALJ erred in failing to articulate good cause for discounting Dr. Kabaria's opinions.

It is important to note that the ALJ here compounded such error by relying on the flawed medical opinions of Charles Plotz, M.D., a non-examining physician who completed responses to medical interrogatories (the "Report"). (Tr. 670-73.) Although the ALJ stated Dr. Plotz "reviewed the medical evidence in its entirety," Dr. Plotz did not have access to the most recent opinions of Drs. Kabaria and Corrao, as those opinions were not rendered until after Dr. Plotz's July 18, 2015 Report. (Tr. 674-83, 684-710, 711-17, 718-39.)

More notably, however, Dr. Plotz mischaracterized the evidence that he did review and made findings contrary to the record evidence. In his Report, Dr. Plotz quoted Dr. Corrao's first fibromyalgia questionnaire and opined that Plaintiff has no significant problems doing daily activities because Plaintiff "is able to do a days work [sic]." (Tr. 673.) Dr. Plotz quoted Dr. Corrao's report out of context. Dr. Corrao's report actually states that "[Plaintiff] is able to do a days work [sic], *but needs recovery for 1-2 days after.*" (Tr. 384 (emphasis added).)

Dr. Plotz also suggests that Plaintiff has an "addiction" to morphine since

14

Plaintiff has been on it "for over 10 years." (Tr. 673.) However, Dr. Plotz ignored the record evidence, which indicates Plaintiff has been compliant with her medications over the course of her treatments. (Tr. 673, 718-39, 674-83, 239-73.) Finally, without examining Plaintiff, Dr. Plotz found that Plaintiff "does not have the fibromyalgia syndrome." (Tr. 673.) This finding contradicts the record, which shows that Plaintiff was diagnosed multiple times with fibromyalgia. (Tr. 354-57, 388-92, 409, 415-29.)

### III.  Conclusion

For the forgoing reasons, the Court concludes that the ALJ improperly evaluated the record medical opinions. Therefore, the Court finds that the ALJ's decision is not supported by substantial evidence. This issue is dispositive and, therefore, it is unnecessary for the Court to address Plaintiff's remaining arguments. *See, e.g., Alexander v. Comm'r of Soc. Sec.*, No. 8:13-cv-1602-T-GJK, 2014 WL 4211311, at *3 n.3 (M.D. Fla. Aug. 26, 2014) (citing *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (stating that on remand the ALJ must reassess the entire record)). However, on remand the ALJ will be directed to reconsider the opinions of Dr. Corrao and Plaintiff's credibility, if necessary.

Accordingly, it is hereby **ORDERED**:

1.  The decision of the Commissioner is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDED** to the Commissioner, with instructions for the ALJ to: (a) reevaluate the record medical opinions and explain

what weight is being accorded to those opinions, and the reasons therefor; (b) if necessary, reconsider Plaintiff's credibility; (c) reconsider the RFC assessment, if necessary, and (d) conduct any further proceedings deemed appropriate.

2.  The Clerk of Court is directed to enter judgment consistent with this Order, and close the file.

3.  Plaintiff's counsel is advised that, in the event benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in Case No.: 6:12-124-Orl-22 (*In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*).  This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** in Jacksonville, Florida, on March 22, 2017.

*[signature]*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record